UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 18-88 JGB (KKx)** | Date | December 30, 2019 |
|---|---|---|---|
| Title | *Allied Premier Insurance, a Risk Retention Group v. United Financial Casualty Company* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order (1) DENYING Defendant's Motion for Summary Judgment (Dkt. No. 19); and (2) GRANTING Plaintiff's Motion for Summary Judgment (Dkt. No. 20) (IN CHAMBERS)

Before the Court are two motions for summary judgment, one filed by Defendant United Financial Casualty Company ("Defendant" or "UFCC") ("Defendant's Motion" or "D. Mot.," Dkt. No 19), and the other filed by Plaintiff Allied Premier Insurance, a Risk Retention Group ("Plaintiff" or "Allied") ("Plaintiff's Motion" or "P. Mot.," Dkt. No. 20) (together, "Motions"). The Court held hearings on the matter on March 11, 2019 and September 23, 2019. After considering the oral arguments and papers filed in support of and in opposition to the Motions, the Court GRANTS Plaintiff's Motion and DENIES Defendant's Motion.

## I.   BACKGROUND

### A.   Procedural History

On December 12, 2017, Plaintiff filed a complaint against Defendant in the California Superior Court for the County of San Bernardino. ("Complaint," Dkt. No. 1-1.) Plaintiff brings this action for reimbursement of the settlement amount it paid in a wrongful death action resulting from an automobile collision in which one of the drivers, José Porras, was a commercial motor carrier. (Id.; P. Mot. at 1, 4.) The Complaint contains three causes of action: 1) declaratory relief – duty to indemnify, 2) equitable contribution, and 3) equitable subrogation. (Compl.) On January 12, 2018, Defendant removed the action to this Court. (See Notice of

Removal, Dkt. No. 1.) On January 18, 2019, Defendant filed its answer to the Complaint. ("Answer," Dkt. No. 9.)

On December 12, 2018, the parties filed a joint statement of stipulated facts and exhibits. ("JSSF," Dkt. No. 16.) In the JSSF, the parties stipulated, subject to objections under Federal Rules of Evidence 401–415, to the admissibility of several exhibits for the purposes of their Motions. (Id. at 2.) Among those exhibits are

- a copy of Porras's UFCC policy ("UFCC Policy," Dkt. No. 16 at 6–71[1]),
- a copy of the Certificate of Insurance submitted by UFCC to the California Department of Motor Vehicles ("DMV") on form DMV 65 MCP ("UFCC COI," Dkt. No. 16 at 72),
- a copy of the Insurance Policy Endorsement provided by UFCC to Porras on form DMV 67 MCP ("UFCC Endorsement," Dkt. No. 16 at 73),
- a copy of the Notice of Cancellation of Insurance submitted by UFCC to the DMV on form DMV 66 MCP ("Notice of Cancellation," Dkt. No. 16 at 79), and
- a copy of the Notice of Incomplete Filing sent by the DMV to UFCC on form DMV 139 MCP ("Notice of Incomplete Filing," Dkt. No. 16 at 89–90).

On December 31, 2018, both parties filed their Motions. Defendant's Motion was accompanied by a separate statement of undisputed material facts ("DSUF," Dkt. No. 19-1), a memorandum of points and authorities ("Defendant's Memo" or "D. Memo," Dkt. No. 19-2), and a request for judicial notice ("RJN," Dkt. No. 19-4).[2] Plaintiff's Motion was accompanied by the declaration of Ian Culver ("Culver Decl. I," Dkt. No. 20-1) and a statement of undisputed facts ("PSUF," Dkt. No. 20-2).

The parties filed oppositions on January 7, 2019. ("Defendant's Opposition" or "D. Opp.," Dkt. No. 22; "Plaintiff's Opposition" or "P. Opp.," Dkt. No. 23.) Defendant's Opposition was accompanied by a Statement of Genuine Disputes of Material Fact ("DSGD," Dkt. No. 22-1), a supplemental RJN ("Supp. RJN," Dkt. No. 22-2),[3] and a statement of objections to facts offered by Plaintiff ("D. Obj. I," Dkt. No. 22-3). Plaintiff's Opposition was

---

[1] Because Dkt. No. 16 includes multiple documents with distinct pagination, the Court refers to the page numbers contained in the heading generated by the Electronic Case File ("ECF") system. Hereinafter, when citing documents within Dkt. No. 16, the Court will refer to the page numbers of the specific document.

[2] Defendant requests that the Court take judicial notice of the Complaint and Answer in this action. (RJN at 2.) The Court DENIES the RJN because records on the Court's own docket in this matter are improper subjects of judicial notice.

[3] Defendant requests that the Court take judicial notice of General Order 100M of the California Public Utilities Commission and California Vehicle Code sections 34600–34672. The Court DENIES the Supp. RJN because the Court need not take judicial notice of relevant statutes and regulations.

accompanied by a statement of genuine disputes of material fact ("PSGD," Dkt. No. 23-1) and a statement of objections to facts offered by Defendant ("P. Obj. I," Dkt. No 23-3). On January 14, 2019, the parties filed replies ("Defendant's Reply" or "D. Rep.," Dkt. No. 24; "Plaintiff's Reply" or P. Rep.," Dkt. No. 25), both of which were accompanied by additional objections ("D. Obj. II," Dkt. No 24-1; "P. Obj. II," Dkt. No. 25-1).

On March 11, 2019, the Court held a hearing and heard oral argument on the Motions. After the hearing, the Court requested supplemental briefing to address the following question:

> Considering the conclusive presumption established by Cal. Ins. Code § 11580.9(d), and given Transamerica Ins. Co. v. Tab Transp., Inc., 12 Cal. 4th 389 (1995), may the Court conclude that the UFCC and Allied policies were co-primary without finding that the insured's vehicle (with VIN ending in 8804) was scheduled on UFCC's policy? Assuming that the Court may find that both policies were primary, what is the effect of such a finding?

("Supp Brief Order," Dkt. No. 30.) On March 18, 2019, the parties filed their supplemental briefs. ("D. Supp.," Dkt. No. 31; "P. Supp.," Dkt. No. 32.)

On May 28, 2019, the Court held a status conference. (See Dkt. No. 38.) At the status conference, the Court directed the parties to meet and confer and submit a stipulation to reopen discovery for the limited purpose of determining whether the vehicle at issue in this action was scheduled on Defendant's policy. Following the status conference, the parties stipulated to reopen discovery for sixty days. (Dkt. No. 36.) The Court granted the stipulation on May 29, 2019. (Dkt. No. 37.)

On August 20, 2019, Plaintiff filed the declaration of Ian Culver, accompanied by five exhibits containing Defendant's responses to Plaintiff's request for production, requests for admissions, and interrogatories. (Dkt. Nos. 39, 39–1.) On August 27, 2019, the Court ordered the parties to file concurrent supplemental briefs advancing arguments as to the impact of the newly propounded evidence. (Dkt. No. 40.) On September 9, 2019, Plaintiff and Defendant filed their respective briefs. ("Defendant's Second Supplemental Brief" or "D. Supp. II," Dkt. No 41; "Plaintiff's Second Supplemental Brief" or "P. Supp. II," Dkt. No. 42.) On September 16, 2019, Plaintiff filed a response to Defendant's Second Supplemental Brief (Dkt. No. 44), and Defendant filed a response to Plaintiff's Second Supplemental Brief ("Defendant's Response to Plaintiff's Second Supplemental Brief" or "D. Resp. P. Supp. II," Dkt. No. 43). The Court held an additional hearing on September 23, 2019.

**B. Statutory and Regulatory Framework Governing Insurance of Motor Carriers**

To operate in California, a commercial motor carrier must establish "financial responsibility" – that is, public liability insurance – in the amount of at least $750,000. Cal. Veh. Code §§ 34630(a), 34631.5(a)(1). Proof of financial responsibility must be established in one of four ways outlined in Cal. Veh. Code § 34631. One option is to file a certificate of insurance with

the California Department of Motor Vehicles ("DMV"). Id. § 34631(a). The rules promulgated by the DMV specify that the Certificate of Insurance ("COI") is to be submitted on form DMV 65 MCP. Cal. Code Regs. tit. 13, § 220.06(a). The DMV does not receive the actual insurance policy unless it requests it. (DSUF ¶ 15; UFCC COI; UFCC Endorsement.) The COI must contain a provision that it will remain in full force and effect until cancelled in the manner specified by the Vehicle Code. Cal. Veh. Code § 34631.5(b)(4). The insurer must also issue an Insurance Policy Endorsement, using form DMV 67 MCP, which "shall be attached to and made part of[] the insurance policy insuring the motor carrier." Cal. Code Regs. tit. 13, § 220.06(b). A copy of the Insurance Policy Endorsement must be provided to the insured motor carrier. Id.

To cancel the COI, the insurer must provide a Notice of Cancellation of Insurance, using form DMV 66 MPC, to the DMV at least 30 days in advance. Cal. Veh. Code § 34630(b); Cal. Code Regs. tit. 13, § 220.06(c). The 30 days begin "to run from the date the notice is actually received" at the DMV office in Sacramento. Cal. Veh. Code § 34631.5(b)(3). If the information contained in the Notice of Cancellation does not conform exactly to the information on the Certificate of Insurance it seeks to cancel, the DMV returns the Notice of Cancellation to the insurer. (PSUF ¶ 21.)

The insurance requirements for motor carriers were formerly established by the California Public Utilities Code ("PU Code") and orders of the California Public Utilities Commission ("PUC"). In 1996, California passed the Motor Carrier Safety Improvement Act, which repealed the sections of the PU Code regulating insurance of motor carriers and replaced them with the sections of the California Vehicle Code cited above. See 1996 Cal. Legis. Serv. Ch. 1042 (A.B. 1683) (West). The Act also transferred authority for issuing regulations relating to motor carriers from the PUC to the DMV. Id.

## II. FACTS

The following material facts are sufficiently supported by admissible evidence and are uncontroverted. They are "admitted to exist without controversy" for purposes of the Motions. See Fed. R. Civ. P. 56(e)(2); L.R. 56-3. The Court considers the parties' objections where necessary. All other objections are OVERRULED AS MOOT.

At all relevant times, José Porras was a commercial trucker with a "motor carrier of property" permit. (JSSF ¶ 5.) Beginning on May 2, 2013, Porras was insured under a commercial auto insurance policy issued by UFCC, which covered up to $750,000 in bodily injury.[4] (Id. ¶ 1.) The automobile covered under that policy was a 2013 Dodge RAM 3500 pickup truck with a VIN ending in 5181. (Id.) At some point, a truck with a VIN ending in 8804 became scheduled under UFCC's Policy. (P. Supp. II at 2 (citing Dkt. No. 39-1); D. Supp. II at 1.) The UFCC Policy stated that it "applie[d] only to accidents and losses occurring during the

---

[4] At some point prior to April 12, 2015, the bodily injury coverage under the UFCC policy increased to $1 million. (JSSF ¶ 6.)

policy period[.]" (UFCC Policy at 21.)  UFCC submitted a Certificate of Insurance to the DMV[5] and an Insurance Policy Endorsement to Porras.[6]  (JSSF ¶¶ 2, 3; UFCC COI; UFCC Endorsement.)

---

[5] In the COI, UFCC certified that Porras was "covered by an insurance policy providing bodily injury or death liability insurance" as required by statute. (UFCC COI.)  The COI further indicated that UFCC agreed that "[t]his Certificate of Insurance shall not be cancelled on less than thirty (30) days notice from the Insurer to the DMV and written on a Notice of Cancellation form authorized by the DMV, and that the thirty (30) day period commences to run from the date the Notice of Cancellation form was actually received at the office of the" DMV.  (Id.)

[6] The Endorsement stated, "This Endorsement shall be attached to and made part of all policies insuring motor carriers of property required to obtain a permit pursuant to Motor Carriers of Property Permit Act[.]"  (UFCC Endorsement.)  In the Endorsement, UFCC agreed to the following:

- The coverage provided by the endorsement excludes any costs of defense or other expense that the policy provides.
- To pay, consistent with the minimum insurance coverage required by California Vehicle Code Section 34631.5, and consistent with the limits it provides herein, any legal liability of insured for bodily injury, death, or property damage arising out of the operation, maintenance, or use of any vehicle(s) for which a motor carrier permit is required, whether or not such vehicle(s) is described in the attached policy.
- No provision, stipulation, or limitation contained in the attached policy or any endorsement shall relieve insurer from obligations arising out of this Endorsement or the Act, regardless of the insured's financial solvency, indebtedness or bankruptcy.
- The Certificate of Insurance shall not be canceled on less than thirty (30) days notice from the Insurer to the DMV, written on an authorized Notice of Cancellation form and that the thirty (30) day/period commences to run from the date the Notice of Cancellation was actually received at the office of the California Department of Motor Vehicles, Motor Carrier Services Branch, in Sacramento, California.
. . .
- Except as specified in this endorsement, the terms, conditions, and limitations of this policy remain in full force and effect. This endorsement shall not prevent insurer from seeking reimbursement from insured for any payment made by insurer solely on account of the provisions herein.

(Id.)  In the Endorsement, UFCC also certified that "This insurance policy covers all vehicles used in conducting the service performed by the insured for which a motor carrier permit is required whether or not said vehicle(s) is listed in the insurance policy."  (Id.)

Plaintiff objects to evidence of several of the provisions of the Endorsement on the basis that they are irrelevant.  (P. Obj. I ¶¶ 9, 11; P. Obj. II ¶¶ 26, 28, 40.)  "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an

"Effective April 12, 2015, the UFCC policy lapsed when José Porras did not renew the policy pursuant to its provisions for automatic termination." (JSSF ¶ 10; see UFCC Policy at 25.) On April 12, 2015, UFCC submitted a Notice of Cancellation of Insurance to the DMV.[7] (JSSF ¶ 10; Notice of Cancellation.) However, the DMV returned the Notice of Cancellation to UFCC with a Notice of Incomplete Filing, indicating that the policy number or effective date on the Notice of Cancellation was not on file with the DMV. (JSSF ¶ 13; Notice of Incomplete Filing.)

Beginning on April 13, 2015, Porras was insured under an Allied policy, which covered a 2013 Dodge RAM 3500 pickup truck with a VIN ending in 8804. (JSSF ¶ 11.) The plan provided bodily injury liability coverage of $1 million. (Id.) On April 17, 2015, Allied submitted a Certificate of Insurance to the DMV. (Id. ¶ 12.) Because UFCC's Notice of Cancellation was returned, the DMV had on file Certificates of Insurance for Porras from both UFCC and Allied. (Id. ¶ 14.)

On September 1, 2015, Porras was involved in an automobile collision with Jennifer Jones in Rialto, California (the "Collision"). (Id. ¶ 15.) At that time, Porras was driving a 2013 Dodge RAM 3500 pickup truck with VIN ending in 8804 (the "Vehicle"). (Id.) Jones died as a result of the Collision. (Id.)

On December 3, 2015, Jones's survivors filed a wrongful death lawsuit against Porras in San Bernardino Superior Court, Emmett Jones, Jr. and Sherri Bruner-Jones v. Jose Francisco Porras and Horizon 4 Transporters, Case No. C1VDS1517662 (the "Lawsuit"). (Id. ¶ 17; Compl. ¶ 3.) Because the accident was covered by an Allied policy, Allied defended Porras in the Lawsuit. (JSSF ¶ 18.) In November 2016, Allied settled the Lawsuit for $1 million. (Id.) UFCC neither defended nor contributed to the settlement of the Lawsuit. (Id. ¶ 19.)

### III.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. See Celotex Corp.

---

improper legal conclusion are all duplicative of the summary judgment standard itself . . . ." Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). Thus, these objections are redundant and need not be considered separately. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted."). Plaintiff's objections to provisions of the Endorsement are therefore OVERRULED.

[7] The Notice of Cancellation stated that "Insurer hereby gives notice that the above referenced policy, including applicable endorsement and certifications, is hereby **CANCELLED**. This cancellation shall be effective thirty (30) days after the date received by the Motor Carrier Services Branch, Department of Motor Vehicles in Sacramento, CA or on 04/12/2015 at 12:01 a.m. (at the address of the insured), whichever occurs last." (Notice of Cancellation.)

v. Catrett, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof at trial, the moving party need only prove there is an absence of evidence to support the nonmoving party's case.  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).  The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

If the moving party has sustained its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial.  Celotex, 477 U.S. at 324.  The non-moving party must make an affirmative showing on all matters placed at issue by the motion as to which it has the burden of proof at trial.  Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252.  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."  In re Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson, 477 U.S. at 248.  When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party.  Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991).  Thus, summary judgment for the moving party is proper when a "rational trier of fact" would not be able to find for the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV.  DISCUSSION

In their respective Motions, each party contends that there is no genuine dispute as to any material fact and that they are each entitled to summary judgment in their favor.  (P. Mot. at ii; D. Mot. at 2.)  According to Plaintiff, the issue in dispute is whether Defendant properly provided notice to the DMV of the cancellation of its policy.  (P. Mot. at 1.)  Plaintiff "claims the notice was ineffective and that, as a result, Defendant's certificate of insurance was still in effect on September 1, 2015, and therefore available and subject to Allied Premier's claims for equitable contribution and subrogation."  (Id.)  In its Opposition, Plaintiff clarifies its view that Defendant's insurance policy was still in effect at the time of the accident as a result of Defendant's failure to properly submit a Notice of Cancellation of Insurance.  (P. Opp. at 1.)

Defendant argues that a Certificate of Insurance[8] filed with the DMV is not an insurance policy, but a surety, the purpose of which is to provide a "safety net" for members of the public

---

[8] Defendant uses the term "public filing" throughout its Memo.  Defendant appears to be referring to the Certificate of Insurance insurers must file with the DMV.  (See D. Memo at 4 ("In addition to issuing insurance contracts to Mr. Porras, UFCC and Allied submitted public filings to the DMV to evidence Mr. Porras' financial responsibility as a motor carrier."); id. at 5 ("The MCP 67 form stated that UFCC's public filing on file with the DMV would not be canceled on less than 30 days' notice.").)  For the sake of consistency and clarity, the Court uses the term "Certificate of Insurance" or "COI."  The Court notes that the cases cited by

injured by commercial truckers. (D. Memo at 1–2.) According to Defendant, in filing a COI, the insurer "promises to pay up to $750,000 towards a judgment against the trucker [only] where coverage for some reason is unavailable under an actual insurance policy . . . or where available coverage is less than $750,000." (Id. at 1.) Thus, Defendant argues the Court should grant summary judgment in its favor for four reasons: 1) "UFCC's [COI] did not apply because its 'safety net' benefit flowed only to the third-party wrongful death claimants[,]" who "did not need the 'safety net' because Allied's policy provided actual coverage" in an amount above the minimum required by law; 2) "UFCC's public filing did not apply because the wrongful death claimants did not obtain a judgment against the commercial trucker[;]" 3) "Allied was wholly responsible for the $1 million settlement under" the California Insurance Code, which designates as primary the insurance policy that actually described the vehicle involved in the accident; and 4) "an insurer is entitled to equitable contribution or subrogation from another insurer only for benefits owed under an actual insurance policy[,]" not under a Certificate of Insurance. (Id. at 2.)

The Court first addresses Plaintiff's arguments regarding the effectiveness of UFCC's Notice of Cancellation. It then considers Defendant's arguments about the nature of UFCC's coverage remaining at the time of the Collision. After concluding that UFCC's policy was still in effect, rather than a "surety," the Court turns to the question of which party's policy was primary.

A. **UFCC's Notice of Cancellation**

1. **Whether the Notice of Cancellation was Effective**

Plaintiff argues that, because the DMV returned the Notice of Cancellation to UFCC with a Notice of Incomplete Filing (see Notice of Incomplete Filing), "the DMV did not come into possession of the cancellation and therefore never 'actually received' it." (P. Mot. at 12.) Defendant does not respond to Plaintiff's arguments regarding the effectiveness of its Notice of Cancellation, except to argue, as addressed below, that the statutory cancellation requirements refer to the cancellation of the COI rather than the policy.

The relevant statutory provisions and DMV forms require 30 days' notice of cancellation, running from the date the Notice of Cancellation "was actually received at the office of the" DMV. (UFCC COI; UFCC Endorsement; Notice of Cancellation.) Cal. Veh. Code § 34631.5(b)(3). However, neither the statute nor any DMV form explains the meaning of

---

Defendant discuss coverage provided by endorsements, not COIs. See Paul Masson Co. v. Colonial Ins. Co., 14 Cal. App. 3d 265, 273 (1971) ("The sweeping language of the endorsement, attached to the permittee's policy, was 'to assure compliance' [with PUC General Order No. 100B] in the event no owner's policy applied."); Condor Ins. Co. v. Williamsburg Nat. Ins. Co., 49 Cal. App. 4th 554, 564 (1996) ("[W]here the injured person may be fully compensated by the subhauler's primary insurance coverage, there is no need to resort to the excess coverage provided by the primary hauler's P.U.C. endorsement.").

"actually received" or indicates the significance of return of a Notice of Cancellation with a Notice of Incomplete Filing.  The Notice of Incomplete Filing itself states only that "[t]he Certificate of Insurance or Notice of Cancellation is being returned for the following reason." (Notice of Incomplete Filing.)  Here, the reason indicated was that the "[p]olicy number or effective date on [the] Notice of Cancellation [was] not on file with the department." (Id.)  It would make little sense to expect the DMV to process a Notice of Cancellation with an incorrect policy number or effective date.  To consider such a Notice of Cancellation "actually received" would conflict with the apparent purpose of the notice requirement: to allow the DMV to determine when coverage is no longer in effect so that it can ensure that no carrier operates without the requisite insurance.  See Cal. Veh. Code § 34630(c).  The Court therefore finds that the Notice of Cancellation was ineffective.

### 2. Effect of Ineffective Notice of Cancellation

Plaintiff argues Defendant's insurance policy was in force at the time of the Collision because "California courts require an insurer to strictly comply with the DMV cancellation notice requirements under the financial responsibility statutes regulating motor carriers of property." (P. Mot. at 8 (citing Transamerica Ins. Co. v. Tab Transp., Inc., 12 Cal. 4th at 401; Fireman's Fund Ins. Co. v. Allstate Ins. Co., 234 Cal. App. 3d 1154, 1166–67 (1991).)  The two California cases on which Allied relies considered the effect of the failure of insurance companies to notify the PUC[9] of expiration or cancellation of a policy.  See Transamerica, 12 Cal. 4th at 394; Fireman's, 234 Cal. App. 3d at 1158.

In Transamerica, a commercial trucking company, Tab Transportation, Inc. ("Tab"), purchased an insurance policy from Transamerica Insurance Company ("Transamerica"), which it later replaced with a policy from Federal Insurance Company ("Federal"), which was in turn replaced with a policy from Home Indemnity Company ("Home"). 12 Cal. 4th at 395.  As required by PUC regulations, each policy was accompanied by an endorsement, which provided, in relevant part, that the policy would remain "in full force and effect until canceled[.]" Id. at 401.  "Although Tab had replaced the Transamerica policy with the Federal policy, which in turn was replaced by the Home policy, neither Transamerica nor Tab ever notified the PUC of the cancelation of the Transamerica policy" as required under the regulatory scheme. Id. at 394–95. Years after the Transamerica policy expired, a truck owned by Tab was involved in a collision. Id. at 393.  The injured parties sued Tab, and Federal and Home each contributed their respective policy limits to a settlement. Id. at 396.  Transamerica did not participate in the settlement. Id.  It later filed an action against Tab seeking a declaratory judgment that it was not liable for damages arising from the accident. Id.

The California Supreme Court determined that, under the terms of the endorsement, Transamerica's failure to provide notice of cancellation caused its policy to remain in effect so that it covered the accident. Id. at 394.  The court reasoned as follows:

---

[9] Under the prior statutory scheme, the PUC occupied the role currently performed by the DMV.  See supra § I.B.

> To ensure that the public is . . . protected [from evils like inadequate insurance] at all times, the regulatory scheme requires--by means of a standard PUC form endorsement attached to the policy--that a liability policy issued to a highway carrier continue "in full force and effect until canceled," by giving 30 days' written notice to the PUC. The effect of attaching the endorsement to the policy . . . is to automatically incorporate the provisions of the endorsement into the policy. Here, incorporation of the provisions of the endorsement into the Transamerica policy converted it from a one-year term policy . . . to a policy that remained continuously in effect until canceled. Because Transamerica failed to give the PUC the required notice of cancelation when there was no policy renewal by Tab, the policy was still in effect and thus provided coverage for Tab at the time of the 1989 accident.

Id. Fireman's Fund also involved two insurance companies, one of which had failed to give written notice of cancellation to the PUC, covering the same trucking company. 234 Cal. App. 3d at 1159. The Court of Appeal similarly concluded that "Fireman's failure to provide the PUC with notice of cancellation resulted in continued, uninterrupted coverage of [the trucking company]." Id. at 1163.

However, as Defendant points out, both Transamerica and Fireman's "involv[ed] a PUC-based statutory scheme that no longer exists." (D. Opp. at 9.) Significantly, the former statute provided that "[t]he policy of insurance . . . shall not be cancelable on less than 30 days' written notice to the commission[.]" Transamerica, 12 Cal. 4th at 408 (quoting California Public Utilities Code section 3634) (emphasis added); see also id. at 411 ("A policy of insurance . . . evidencing such protection, shall not be cancelable on less than thirty (30) days' written notice to the Public Utilities Commission . . . .") (quoting PUC General Order No. 100, Section 6) (emphasis added). Defendant emphasizes that the current statute, regulations, and DMV forms outline the procedure for cancellation not of the policy, but of the COI. (D. Opp. at 10–11.) See Cal. Veh. Code § 34630(b) ("The certificate of insurance shall not be cancelable on less than 30 days' written notice from the insurer to the department . . . .") (emphasis added); Cal. Code Regs. tit. 13, § 220.06(c) ("Written notice of cancellation of the Certificate of Insurance, required under Vehicle Code section 34630(b), shall be submitted by the insurer to the department on a Notice of Cancellation of Insurance, [DMV 66 MCP (REV. 6/2001)] . . . .") (emphasis added); UFCC COI ("This Certificate of Insurance shall not be canceled on less than thirty (30) days notice from the Insurer to the DMV . . . .") (emphasis added); UFCC Endorsement ("The Certificate of Insurance shall not be canceled on less than thirty (30) days notice from the Insurer to the DMV . . . .") (emphasis added).) Defendant argues this language "acknowledge[s] the critical distinction between the insurance policy and an insurer's 'certificate of insurance'" and that there is therefore "no conflict between UFCC's insurance policy and the motor carrier law and regulations concerning cancellation of the insurance contract." (D. Opp. at 11–12.)

The Court is aware of no published case interpreting the meaning of the cancellation provisions of the current statute, regulation, or forms. The consistency of reference to

cancellation of the COI, rather than the policy, under the current scheme supports an inference that the California legislature purposefully departed from the prior language.  However, if California lawmakers intended to change the statutory scheme so that insurers were no longer required to provide notice in order to cancel a policy, they presumably would have used clearer language.  Moreover, if the cancellation procedure does not refer to cancellation of the policy, it is unclear what significance the procedure has.  The purpose of the COI under the statute is to provide proof of insurance coverage.  See Cal. Veh. Code § 34631.  Neither the DMV forms nor the statute provide any indication of what it might mean to cancel proof of insurance, if not to cancel the insurance policy itself.  In addition, the Notice of Cancellation form states that the "Insurer hereby gives notice that the above referenced policy, including applicable endorsement and certifications, is hereby **CANCELLED**."  (Notice of Cancellation (emphasis added).)  Thus, the Notice of Cancellation not only informs the DMV that the policy is cancelled, but actually cancels the policy.

In light of the California Supreme Court decision in Transamerica, the lack of clear legislative intent to depart from that decision, the language of the Notice of Cancellation, and the fact that the only court to have considered the meaning of the cancellation provision of the current statute determined it referred to cancellation of the policy,[10] the Court concludes that an insurer must comply with the procedure outlined in Cal. Veh. Code § 34630(b) and Cal. Code Regs. tit. 13, § 220.06(c) to cancel an insurance policy covering a motor carrier of property.  If it does not, the policy remains in effect, even though it may have lapsed under its own terms or been cancelled by the parties.  Because UFCC failed properly to submit a Notice of Cancellation, its policy remained in effect at the time of the Collision.[11]

---

[10] The unpublished case, Williamsburg Nat. Ins. Co. v. Progressive Cas. Ins. Co., 2009 WL 2581266, at *8–9 (Cal. Ct. App. Aug. 21, 2009), discussed the meaning of the language in the statute and the Endorsement regarding cancellation of the COI.  There, the court understood Cal. Veh. Code § 34630(b) to "prohibit[] cancellation of mandated insurance on less than 30 days written notice[.]"  Id. at *8.  However, the court did not address the significance of the fact that the statute and Endorsement referred to cancellation of the COI, rather than of the insurance policy.

[11] Defendant argues that, because it is entitled to seek reimbursement from Porras for any amount paid "solely on account of the provisions" of the Endorsement (see Endorsement), "[a]warding Allied relief here would simply expose Mr. Porras to UFCC's reimbursement rights, which . . . would flow back to Allied in any event."  (D. Supp. II at 7; see also D. Memo at 11 n. 5.)  The question of whether UFCC is entitled to reimbursement from Porras is not before the Court.  However, the Court is not convinced that such an entitlement on the part of UFCC would have any impact on the Court's determination that UFCC's Policy was still in effect at the time of the Collision.  In Transamerica, the California Supreme Court saw no conflict between finding Transamerica's policy provided coverage for Tab and concluding Transamerica was entitled to reimbursement from Tab for payments it would not have made but for the endorsement.  See 12 Cal. 4th at 394, 403.

### B. Defendant's "Surety" Argument

Though the Court has determined that UFCC's policy remained in effect, the parties agree that the full range of damages recoverable under the policy was no longer available after the policy lapsed. The Court thus addresses Defendant's arguments about the nature of the coverage provided by UFCC that remained at the time of the Collision ("Remaining Coverage"). Defendant characterizes the Remaining Coverage as a surety. (D. Memo at 1–2.) However, Defendant cites no California authority supporting the general proposition that a COI that remains on record after a policy lapses functions as a surety, through which the insurer "promises to pay up to $750,000 towards a judgment against the trucker [for harm to a third party] where coverage for some reason is unavailable under an actual insurance policy."[12] (Id. at 1.) The Court therefore considers each attribute of the "surety" Defendant argues continued in effect at the time of the Collision.

#### 1. Whether the Remaining Coverage Covers Harm to Third Parties Only

The UFCC Policy covered both harm to third parties and damage to Porras's vehicle. (UFCC Policy at 6, 14.) According to Defendant, the only coverage remaining derived from the COI, which "was not an insurance policy aimed at protecting Mr. Porras' assets[;]" rather, its "benefit flowed only to the wrongful death claimants." (D. Memo at 8.) At the March 11, 2019 hearing, Plaintiff argued that UFCC's coverage still in effect at the time of the Collision

---

[12] In its Second Supplemental Brief, Defendant cites a Tenth Circuit decision adopting the majority view that the MSC-90, a form that serves a similar purpose to the COI and Endorsement under the federal regulatory scheme for interstate trucking, establishes a "surety rather than a modification of the underlying policy." Carolina Cas. Ins. Co. v. Yeates, 584 F.3d 868, 878 (10th Cir. 2009).

> [This] surety obligation--to pay a negligence judgment against a motor carrier under the MCS-90 endorsement-- . . . is triggered only when (1) the underlying insurance policy to which the endorsement is attached does not otherwise provide coverage, and (2) either no other insurer is available to satisfy the judgment against the motor carrier, or the motor carrier's insurance coverage is insufficient to satisfy the federally-prescribed minimum levels of financial responsibility.

Id.; see also Canal Ins. Co. v. Shelter Ins. Co., 2010 WL 4447566 (D. Idaho Oct. 28, 2010) (following Yeates's approach to the federal MCS-90 form); Twin City Fire Ins. Co. v. Kazel, 2010 WL 2844085 (D. Colo. July 19, 2010) (considering Yeates's approach in interpreting a similar endorsement under Colorado law). However, the Court is aware of no decision adopting this interpretation of the COI or Endorsement under California law. Moreover, the Tenth Circuit's approach conflicts with Transamerica and Fireman's Fund, which held that endorsements caused the policies to remain in effect. These California cases reject the notion that coverage provided under an endorsement is triggered only when no other policy provides adequate coverage. See infra § IV.B.2.

protected only third parties. As support, it pointed to the language in the Endorsement providing that the insurer agrees "[t]o pay, consistent with the minimum insurance coverage required by California Vehicle Code Section 34631.5, and consistent with the limits it provides herein, <u>any legal liability of insured for bodily injury, death, or property damage</u> arising out of the operation, maintenance, or use of any vehicle(s) for which a motor carrier permit is required . . ." (UFCC Endorsement (emphasis added).) The parties thus agree, and the Court therefore accepts, that the Remaining Coverage extended only to harm to third parties.[13]

### 2. Whether the Remaining Coverage is Triggered Only When No Insurance Policy Provides "Actual Coverage"

#### a. <u>Paul Masson</u> and <u>Condor</u>

Defendant cites two California Court of Appeal cases for the proposition that "where there is sufficient insurance coverage to protect a third-party claimant, a public filing does not share the risk with an insurance policy that provides actual coverage." (D. Memo at 9 (citing <u>Paul Masson Co. v. Colonial Ins. Company</u>, 14 Cal. App. 3d 265, 274 (1971); <u>Condor Ins. Co. v. Williamsburg Nat'l Ins. Co.</u>, 49 Cal. App. 4th 554, 560 (1996)).) In <u>Paul Masson</u>, the court interpreted the language of an endorsement signed by an insurance company that insured Trails Trucking Co. ("Trails"), an authorized public carrier under a PUC permit. 14 Cal. App. 3d at 268–69. Trails hired a subhauler, Arthur G. Machado Company ("Machado"), to deliver a load for it. <u>Id.</u> at 269. Machado had its own insurance; however, in completing the delivery, Machado operated under Trails' PUC permit. <u>Id.</u> Machado's driver was injured while helping unload the cargo. <u>Id.</u> The issue before the court was which policy – Trails' or Machado's – covered the injury. <u>Id.</u> at 268.

Trails' insurer had signed an endorsement, in which it "agree[d] to pay within the limits provided in the endorsement . . . any judgment rendered against the insured for bodily injury resulting from the use of motor vehicles for which a . . . permit . . . has been issued by the Public Utilities Commission, regardless of whether such vehicles are specifically described in the policy or not." <u>Id.</u> at 273. The purpose of the endorsement was "to assure compliance" with a PUC order, which "requir[ed] each carrier to provide 'adequate protection against liability imposed by law upon such carriers for the payment of damages for personal bodily injuries' in the amount of not less than $ 25,000 for injuries to one person." <u>Id.</u> (quoting PUC General Order No. 100B).

The court concluded Trails' insurer was not liable because the endorsement was intended only "'to assure compliance' [with General Order No. 100B] in the event no owner's policy applied." <u>Id.</u> The court reasoned that the "purpose of the order was to make certain that no vehicle was operating under Public Utilities Commission license without a minimum amount of liability insurance. Such coverage would normally be provided by the owner of such a vehicle,

---

[13] Defendant also argues that only third parties may collect on the Remaining Coverage's benefits. (<u>See</u> D. Memo at 15.) Plaintiff obviously does not concede this point and, as discussed <u>infra</u> § IV.B.4., the Court is not convinced by Defendant's argument.

under a standard form of owner's policy." Id. Because the owner of the vehicle, Machado, had "more than adequate liability coverage to comply with the requirements of General Order No. 100B, . . . the endorsement on Trails' policy did not apply." Id. at 273–74.

Condor also involved the vehicle of a subhauler that contracted to deliver a load for a carrier that held a PUC permit. 49 Cal. App. 4th at 558. In that case, the court described its decision in Paul Masson as follows:

> The *Paul Masson* court simply stated that, where the injured person may be fully compensated by the subhauler's *primary* insurance coverage, there is no need to resort to the *excess* coverage provided by the primary hauler's P.U.C. endorsement. This statement is not controversial. Rather, it is a simple acknowledgement of the basic rule that excess coverage does not apply unless and until primary coverage is exhausted.

Id. at 564. The Court of Appeal framed the coverage provided by the endorsement form as "excess coverage," as distinct from "primary coverage." However, it is unclear whether this distinction was based on the source of the coverage (i.e., the insurance contract versus the endorsement form), as Defendant argues, or the owner of the policy (i.e., the subhauler/vehicle owner versus the primary hauler/PUC permitholder). Paul Masson focused on the fact that the vehicle owner's policy provided adequate coverage.[14] See 14 Cal. App. 3d at 273. If the determination of which policy was excess was based on who owned the policy, the reasoning of Condor and Paul Masson is inapplicable where, as here, there was only one insured party. If it was based on the source of the coverage, then Condor and Paul Masson's conclusion that the coverage provided by the endorsement was excess arguably conflicts with the California Supreme Court's holding in Transamerica, 12 Cal. 4th 389, and the Third District Court of Appeal's decision in Fireman's Fund, 234 Cal. App. 3d 1154, discussed above.

### b. Transamerica and Fireman's Fund

The Transamerica court, after determining that Transamerica's failure to provide notice of cancellation caused its policy to remain in effect, "consider[ed] Transamerica's contention that an insurer's noncompliance with the cancelation notice requirements pertaining to a liability policy issued to a highway carrier should expose the insurer to liability under the policy only if the highway carrier is not otherwise protected by liability insurance." 12 Cal. 4th at 401 (emphasis added). The court rejected Transamerica's argument and instead determined that "the regulatory scheme governing highway carriers imposes the 'notice of cancelation' requirement

---

[14] Earlier in the decision, the court found, based on its interpretation of the language of the insurance policies, that Trails' insurer provided only excess coverage, while Machado's insurer provided primary coverage. Paul Masson, 14 Cal. App. 3d at 271–72. It did not reference this determination in its discussion of whether the coverage provided under the endorsement was excess.

on an insurer irrespective of the insured's purchase of replacement insurance." Id. at 402. Thus, the Remaining Coverage is not merely a backup triggered when no other insurance policy covers the loss.[15]

However, that an insurer in Transamerica's position remains liable regardless of whether another policy covers the loss does not preclude the possibility that the coverage it provides is merely excess, while the coverage provided by the active policy is primary. As the Condor court acknowledged, "once it is established that an insurer is on the risk, the policy benefits are available to compensate the injured victim (subject to the terms of the insurance contract) even if the primary coverage meets the mandatory P.U.C. insurance requirements." 49 Cal. App. 4th at 564. Nonetheless, an insurer may be "on the risk" but not obligated to cover a particular loss if it provides only excess coverage and the primary insurer's policy covers the entire damages amount. See id. The Transamerica court did not address whether the coverage provided under the endorsement was primary or excess.[16]

However, the Third District Court of Appeal addressed the question in Fireman's Fund, 234 Cal. App. 3d 1154. Fireman's Fund, the company that had failed to cancel its policy, "contend[ed] its policy should be deemed excess to all other insurance covering the accident." Id. at 1167. The court disagreed, holding that Fireman's policy "provided primary, not excess coverage." 234 Cal. App. 3d at 1167–68. Thus, a policy that remains in effect under an endorsement may be triggered even if another insurer provides coverage for the entire amount due to the injured third party. In light of Fireman's Fund, and because Paul Masson and Condor did not clearly hold that coverage provided by a PUC endorsement is necessarily excess, the Court rejects Defendant's argument that "where there is sufficient insurance coverage to protect a third-party claimant, a public filing does not share the risk with an insurance policy that provides actual coverage." (See Motion at 9.) This determination does not resolve the issue of which insurer provided primary coverage here. Rather, the Court merely concludes that the fact that UFCC's coverage remained in effect as a result of the DMV forms it signed does not automatically render that coverage excess.[17]

---

[15] Nor is the Remaining Coverage a backup triggered only when other insurance policies provide less than the statutory minimum coverage. In Transamerica, the California Supreme Court concluded Transamerica's policy provided coverage even though the other two insurers had contributed a total of $1.6 million to the settlement, an amount in excess of the statutory minimum coverage of $600,000. See 12 Cal. 4th at 396, 397 n. 3.

[16] In its Supplemental Brief, Defendant argues that "[t]here was no issue of priority coverage [in Transamerica] because the motor carrier's two other insurers paid their limit of coverage and only Transamerica disputed that its policy applied to the los[s] in the first place." (D. Supp. at 3 (citing Transamerica, 12 Cal. 4th at 396).) Plaintiff does not argue to the contrary in its Supplemental Brief. Moreover, Transamerica did not discuss priority of coverage.

[17] In its Response to Plaintiff's Second Supplemental Brief, Defendant appears to argue for the first time that language in an endorsement providing for reimbursement to the insurer by the insured renders any coverage provided under the endorsement excess. (D. Resp. P. Supp. II

### 3. Whether the Remaining Coverage is Triggered Only by a Judgment Against the Insured

Defendant argues the Remaining Coverage could be triggered only by a judgment against Porras, and thus that it is not obligated to contribute to the settlement. (D. Memo at 11.) In support of this argument, Defendant cites Cal. Veh. Code § 34631.5(a)(1), which requires that every motor carrier have "adequate protection against liability imposed by law upon those carriers for the payment of damages" of at least $750,000. Defendant contends that "'[l]iability imposed by law' means a judgment against the motor carrier of property." (D. Memo at 11 (citing Certain Underwriters at Lloyd's of London v. Superior Court, 24 Cal.4th 945, 960 (2001) ["Underwriters"]; San Diego Housing Comm'n v. Industrial Indem. Co., 68 Cal. App. 4th 526, 544 (1998) ["SDHC"]).)

The cases cited by UFCC do not support the existence of a general rule that "liability imposed by law" means liability resulting from a judgment. In Underwriters, the California Supreme Court held that an "insurer's duty to indemnify the insured for 'all sums that the insured becomes legally obligated to pay as damages' [was] limited to money ordered by a court." 24 Cal. 4th 945 at 951. In SDHC, the Court of Appeal determined that the Housing Commission, "as the insured, [could not] claim liability coverage under the [insurer's] policy for repair costs for problems at the site" where no third party had sued the Housing Commission as a result of those problems. 68 Cal. App. 4th at 543–44. In reaching this conclusion, the court relied on the language of the policy, which provided that "[t]he Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages . . ." Id. at 539, 544. Here, Defendant cites no similarly restrictive language, whether in the policy, statutes, regulations, COI, or Endorsement.

Moreover, Defendant's contention conflicts with Transamerica and Fireman's Fund. In each of those cases, the underlying actions against the insureds had been settled by other carriers. Transamerica, 12 Cal.4th at 396; Fireman's Fund, 234 Cal. App. 3d at 1159. The plaintiffs, Transamerica and Fireman's Fund, respectively, then filed suit, seeking declaratory judgments that they were not liable. Transamerica, 12 Cal.4th at 396; Fireman's Fund, 234 Cal. App. 3d at 1159. Both courts concluded that the plaintiff insurance companies were liable. If there existed a rule that coverage that remains in effect due to failure to cancel applies only to judgments against the insured, those courts surely would have addressed it. Consequently, the Court finds no support in California law for Defendant's argument that its duty under the Remaining Coverage was not triggered because there was no award of damages.

---

at 1–2.) The Court will not consider new arguments raised or new authority cited for the first time in the sixth and final brief Defendant has filed in relation to the Motions. See Zango, Inc. v. Kaspersky Lab, Inc., 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) ("[A]rguments not raised by a party in an opening brief are waived.").

### 4. Whether the Doctrines of Equitable Contribution and Equitable Subrogation apply to the Remaining Coverage

Finally, Defendant argues equitable contribution[18] and equitable subrogation[19] "apply only to sharing of losses under insurance policies, not a public filing." (D. Memo at 14.) Defendant asserts that an insurer may seek these remedies "only for money due under another insurer's contract with its policyholder." (Id. at 15 (citing Fireman's Fund Ins. Co. v. Md. Cas. Co., 65 Cal. App. 4th at 1295).)  Here UFCC signed an Endorsement, the provisions of which were incorporated into the UFCC Policy. See Transamerica, 12 Cal.4th at 394. Thus, any coverage provided under the Endorsement was due under UFCC's contract with the policyholder.

Defendant also points out that "[t]here is no reported case that allows an insurance company that has paid money under its policy to sue another insurer under a public filing." (Id.) The Court notes that Defendant has cited no case holding to the contrary. In addition, Fireman's Fund v. Allstate, 234 Cal. App. 3d 1154, undermines Defendant's position. Though the court did not specify the causes of action, the defendant insurers that had paid the settlement amount in the underlying action "filed a cross-complaint alleging Fireman's failure to comply with PUC cancellation requirements resulted in the policy . . . remaining in effect to its $ 1 million limits." Id. at 1159–60. The Court of Appeal affirmed the trial court's order, which directed Fireman's to pay damages to the defendants/cross-claimants. Id. at 1161, 1174. Thus, an insurer that paid money under its policy may sue another insurer that is liable as a result of failure to properly cancel its policy.

In summary, while the parties agree the Remaining Coverage is more limited than the coverage provided under the active UFCC Policy in that it extends only to harm to third parties, the Court finds no basis to conclude that it is a "surety" under which Defendant is liable only for "up to $750,000 towards a judgment against the trucker where coverage for some reason is unavailable under an actual insurance policy." (D. Memo at 1.)  Nor has Defendant provided sufficient support for its contention that equitable contribution and equitable subrogation do not apply to the Remaining Coverage. Though the Court has rejected Defendant's arguments as to the nature of the Remaining Coverage, Defendant may nonetheless be entitled to summary judgment if its policy was excess, while Plaintiff's was primary.

//

---

[18] "[W]here two or more insurers independently provide primary insurance on the same risk for which they are both liable for any loss to the same insured, the insurance carrier who pays the loss or defends a lawsuit against the insured is entitled to equitable contribution from the other insurer or insurers[.]" Fireman's Fund Ins. Co. v. Md. Cas. Co., 65 Cal. App. 4th 1279, 1289 (1998).

[19] "In the case of insurance, subrogation takes the form of an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid." Id. at 1291-92.

//

**C. Which Insurer's Coverage was Primary**

Defendant argues that Allied's policy was primary, while the coverage UFCC provided was excess. (D. Memo at 13.) Plaintiff's position is that both insurers provided co-primary coverage. (P. Mot. at 13.) Both parties' arguments rely on Cal. Ins. Code § 11580.9(d). The California Insurance Code, in order "to avoid so far as possible conflicts and litigation . . . between and among . . . insurers concerning which, among several policies[,] . . . are responsible as primary, excess, or sole coverage," Cal. Ins. Code § 11580.8, establishes several conclusive presumptions applicable when two or more policies apply, see id. § 11580.9. Section 11580.9(d) provides that

> where two or more policies affording valid and collectible liability insurance apply to the same motor vehicle or vehicles in an occurrence out of which a liability loss shall arise, it shall be <u>conclusively presumed</u> that the insurance afforded <u>by that policy in which the motor vehicle is described or rated as an owned</u> automobile shall be primary and the insurance afforded by any other policy or policies shall be excess.

(emphasis added). The requirement of a description or rating, "in commonsense understanding, means a particularization of the vehicle." <u>Ohio Cas. Ins. Co. v. Aetna Ins. Co.</u>, 85 Cal. App. 3d 521, 524 (1978).

Defendant argues Allied was wholly responsible because its policy described the Vehicle, while Defendant's "public filing" did not. (Defendant's MPA at 13.) Because the Court has determined that Defendant's policy was in effect at the time of the Collision, the issue is whether the Vehicle was "described or rated as an owned automobile" in Defendant's policy. The parties now agree that the Vehicle was scheduled under UFCC's Policy. (<u>See</u> P. Supp II at 2; D. Supp. II at 1.) Accordingly, the Court concludes Allied and UFCC's Policies provided co-primary coverage.

**D. Application to Plaintiff's Claims**

"[W]here two or more insurers independently provide primary insurance on the same risk for which they are both liable for any loss to the same insured, the insurance carrier who pays the loss or defends a lawsuit against the insured is entitled to equitable contribution from the other insurer or insurers[.]" <u>Fireman's Fund Ins. Co. v. Md. Cas. Co.</u>, 65 Cal. App. 4th 1279, 1289 (1998). There is no genuine dispute of fact that Allied and UFCC provided co-primary insurance coverage on the same risk for which they were both liable or that Allied defended the Lawsuit against Porras. The Court therefore GRANTS Plaintiff summary judgment on its equitable contribution claim. The parties agree that, if they are co-primary, they each share equally the $1 million paid by Allied to settle the underlying Lawsuit. (D. Supp. at 1; P. Supp. at 7.) Plaintiff has thus shown it is entitled to equitable contribution in the amount of $500,000.

Summary judgment is likewise GRANTED on Plaintiff's equitable subrogation claim to the extent consistent with but not duplicative of the remedy provided under Plaintiff's equitable contribution claim. The Court also GRANTS Plaintiff's request for declaratory relief insofar as it is consistent with the Court's determination of the parties' rights and obligations as laid out in this Order.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion is GRANTED and Defendant's Motion is DENIED.

**IT IS SO ORDERED.**